IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY DAVID LUKENS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:04CV01508 CEJ/AGF |
| | ) |
| DON ROPER, | ) |
| | ) |
| Respondent. | ) |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pro se petition of Missouri state prisoner Jeffrey Lukens for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action was referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b) for recommended disposition. For the reasons set forth below, the Court recommends that habeas relief be denied.

On August 15, 2001, Petitioner was found guilty by a jury of one count of first degree statutory rape and one count of first degree child molestation. The two victims were L.H. and H.H., Petitioner's stepdaughters. On October 12, 2001, Petitioner was sentenced as a prior and persistent offender to consecutive terms of imprisonment of 15 years and 2 years, respectively. On September 3, 2002, the convictions and sentences were affirmed on direct appeal. Petitioner filed a timely motion for post-conviction relief. Following an evidentiary hearing, the motion was denied, and this denial was affirmed on appeal on June 1, 2004.

1

In his timely petition before this Court, Petitioner claims that his constitutional rights were violated in the following ways:

(1) the trial court improperly admitted into evidence photographs which the State had not provided to the defense prior to trial;

(2) the trial court improperly denied Petitioner's pre-trial motion to dismiss based upon the police department's destruction of exculpatory evidence in its custody;

(3) trial counsel was ineffective in failing to contact or investigate a potential favorable witness; and

(4) the trial court improperly failed to discharge a juror who admitted to the judge and prosecutor during a recess that she knew one of the two victims.

Respondent argues that review of Petitioner's first two claims is procedurally barred, and that habeas relief should be denied for the remaining two claims because the state courts' adjudication of them was factually and legally reasonable.

## BACKGROUND

### Trial

The record establishes that on December 3, 1998, following a hot-line phone call reporting sexual abuse, police officers went to a hotel room where Petitioner, his wife, and his wife's three daughters (L.H., then age 12; H.H., then age 8 or 9; and a younger sister) were living. L.H. denied any sexual abuse, but in a phone call with a police officer the next day, she reported that she had had a sexual relationship with Petitioner. The police removed the children from their mother's custody that same day, and in June 1999 charged Petitioner with sexual abuse of L.H. Evidence included a rape kit, clothing of L.H., and samples from L.H.'s clothing, all gathered by the police on December 4, 1998, and an exculpatory statement made by Petitioner. Lab reports from the rape kit, clothing,

2

and samples all found no serological data connecting Petitioner to L.H. The charges against Petitioner were dismissed on October 5, 1999, after L.H. stated in a deposition that she had made up the accusations against him. The police then destroyed the above-mentioned evidence they had gathered.

Following a hot-line phone call on May 12, 2000, reporting the sexual abuse of H.H., the Missouri Department of Family Services interviewed Petitioner, who stated that he had been tickling H.H. and accidently touched her vagina. When asked if he had sexually abused L.H., Petitioner stated that he had had sexual intercourse with her once in 1998, when the family was living in a hotel room. Petitioner was arrested, and after repeating these statements to the police, was charged with statutory rape of L.H. and statutory sodomy of H.H.

Petitioner's motions to sever the charges for trial and to suppress his statements were denied. The trial court also denied Petitioner's motion to dismiss the charges against him in light of the destruction of the above-mentioned evidence. The court noted that Petitioner would be able to introduce the negative lab results pertaining to that evidence. (Resp.'s Ex. A at 118-21.)

Trial began on August 14, 2001. L.H. testified that in 1998, after Petitioner married her mother earlier that year, Petitioner touched her private parts several times with his hands and with his genitals. She further testified that during two periods of that year, she, her two younger sisters, her mother, and Petitioner all lived together in one of two hotel rooms. When the prosecutor showed L.H. photos of the hotel room which the police had visited on December 3, 1998, defense counsel stated to the court that he had

3

never seen them before and that he thought they were part of the evidence in the prior case that had been destroyed. Id. at 240-60. A recess was taken at that point.

During the recess, a juror, Juror No. 2, informed the court that she was not positive, but that she thought she recognized L.H. from the middle school at which Juror No. 2 had taught part-time during her practicum as a student art teacher. The record does not reflect when the practicum took place. The juror did not recall any specific conversations she may have had with, or about, the girl in question, but L.H.'s mannerisms and speech pattern were familiar to the juror. Upon questioning by the court, by defense counsel, and by the prosecutor, Juror No. 2 stated that she believed she could be impartial in the case and decide the case solely on the basis of the evidence presented and the instructions given by the court. She then stated that she shared her thoughts about possibly recognizing L.H. with the two alternate jurors, telling them that they should be ready to sit as jurors. Defense counsel asked for a mistrial, or alternatively, that Juror No. 2 be replaced with an alternate juror. The court denied the request. Id. at 264-75.

When the trial resumed, the prosecutor asked L.H. to identify the previously-referenced photos of the hotel room in question. She did so, and the photos were admitted into evidence, with defense counsel stating that he had no objection. Id. at 276-82. L.H. testified that Petitioner had sex with her a number of times in 1998. Id. at 250-51, 295, 299. During cross-examination, defense counsel brought out inconsistencies between L.H.'s testimony and prior statements she had made about Petitioner, both exculpatory and inculpatory. Defense counsel used the photographs of the hotel room in questioning L.H. Id. at 312-20. L.H. testified that after she had recanted her accusations

4

about Petitioner, she was in therapy for issues surrounding her lying. She also testified that she had had sex with numerous other men.

At the conclusion of L.H.'s testimony, a lunch break was taken, following which the prosecutor advised the court at a side bar that L.H. had asked him during the break whether she could talk to her art teacher now, and that the prosecutor told her that she could not talk to her teacher until the trial was over. Defense counsel again requested a mistrial, and the court denied the request. Id. at 338-39.

H.H. testified that in the beginning of May 2000, when she and her sisters were visiting her mother, Petitioner, who by court order was not permitted to be present during such visits, came out of a closet in which he was hiding, began playing with and tickling H.H. and put his finger in her vagina. Id. at 346-59. Petitioner presented a forensic scientist as his sole witness. She testified that the analysis of the rape kit collected on December 4, 1998, showed no presence of semen. The jury found Petitioner guilty of statutory rape of L.H. and child molestation of H.H., and he was sentenced as set forth above.

**Direct Appeal**

Petitioner raised two arguments on direct appeal. He argued that the trial court abused its discretion and violated his constitutional rights by (1) refusing to strike Juror No. 2 from the jury, and (2) overruling Petitioner's motion for severance. (Resp. Ex. C.) The state appellate court rejected both points. With regard to Petitioner's first claim, the appellate court stated that even though it eventually became apparent that L.H. and Juror No. 2 were acquaintances in the past, Petitioner did not show that this acquaintance

rendered Juror No. 2's presence on the jury prejudicial. The court noted that a trial court is in the best position to evaluate a venireperson's commitment to follow the law, and that in the present case, the trial court did not abuse its discretion in allowing Juror No. 2 to remain on the jury. (Resp.'s Ex. E at 5-8.)

**State Post-conviction Proceedings**

In a motion for state post-conviction relief, Petitioner raised numerous claims of ineffective assistance of defense counsel, including the ineffective assistance claim he now presents in his federal habeas petition, that counsel was ineffective for failing to contact Angela Middleton. Petitioner claimed that Middleton's name and contact information had been provided to counsel, and that Middleton was willing to testify on Petitioner's behalf that she used to babysit for L.H., and knew that L.H. lied about her supposed sexual activity with other men, and that L.H. "lied when alleging that [Petitioner] sexually abused her." (Resp.'s Ex. F at 3-13.) Petitioner also claimed that direct appeal counsel was ineffective for failing to appeal the trial court's overruling of his motion to dismiss because the police had destroyed the rape kit, L.H.'s clothing, samples, and Petitioner's exculpatory statement, all in connection with the charges filed against Petitioner in 1999. Id. at 17-37.

Citing Strickland v. Washington, 466 U.S. 668, 694 (1984) (holding that to prevail on a claim of ineffective assistance of trial counsel, a habeas petitioner must show that but for counsel's unprofessional errors, the result of the trial would have been different), the motion court rejected the claim regarding defense counsel's failure to contact Middleton. The court held that Middleton would not have been able to testify that L.H. was a liar,

under the general rule that a witness cannot testify as to the credibility of another witness, because such testimony would have invaded the province of the jury. The court held that even had Middleton testified that L.H. was a liar by reputation, "it would not have mattered," as the State had already conceded that L.H. had told lies in the past, and the evidence showed that she was receiving therapy and counseling to deal with her lying. Thus, according to the court, Middleton's testimony would have been cumulative and not a deciding factor in the outcome of the trial. (Resp.'s Ex. F at 46-47.)

The motion court rejected the claim regarding direct appeal counsel, finding that the State had no improper motive in destroying the evidence, and that Petitioner suffered no prejudice from the destruction because at trial he was allowed to use the lab tests to show their negative results. Id. at 47-48. On appeal from the denial of post-conviction relief, Petitioner argued, in part, that the fact that the police did not destroy the photographs, undermined the motion court's finding that the State had no improper motive in destroying the other evidence. (Resp.'s Ex. H.)

The Missouri Court of Appeals affirmed the denial of post-conviction relief, basing its decision on essentially the same grounds relied upon by the motion court. (Resp. Ex. J.)

## DISCUSSION

**Procedural Default**

Respondent argues that Petitioner's first two claims for federal habeas relief -- that the trial court improperly admitted into evidence the photographs of the motel room Petitioner and his family were living in December 1998, and improperly denied

7

Petitioner's motion to dismiss based upon the destruction of evidence -- were procedurally defaulted in state court, because Petitioner did not present these claims to the state appellate court. Respondent further argues that as Petitioner has not shown any reason to excuse the default, this Court is procedurally barred from considering these claims on the merits.

Under the doctrine of procedural default,

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991). "Cause" under the cause and prejudice test "must be something external to the petitioner, something that cannot fairly be attributed to him," for example, a showing that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance with the procedural rule impracticable. Id. at 753 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); see also Greer v. Minnesota, 493 F.3d 952, 957-58 (8th Cir. 2007). To show a miscarriage of justice in this context requires "new reliable evidence" that was not presented at trial and that makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 126 S. Ct. 2064, 2077 (2006) (quoting Schlup v. Delo, 513 U.S. 288, 327 (1995)); see also Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006).

A Missouri inmate procedurally defaults claims which could have been but were

8

not raised on direct appeal. Moore-El v. Luebbers, 446 F.3d 890, 897-98 (8th Cir.), cert. denied, 127 S. Ct. 673 (2006). As Petitioner did not raise either of these claims on direct appeal, the two claims in question were procedurally defaulted. Plaintiff has not asserted any grounds to excuse the default, and this Court discerns none. Nor has Petitioner shown that a miscarriage of justice would result if the two claims in question were not reviewed. The Court will accordingly turn to the merits of Petitioner's remaining two claims, namely that defense counsel was ineffective in failing to call, contact, or investigate Middleton as a witness, and that the trial court improperly failed to discharge Juror No. 2.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court adjudication:

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or confronts facts that were materially indistinguishable from a relevant Supreme Court precedent, but arrives at the opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court "unreasonably

9

applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413; see also Linehan v. Milczark, 315 F.3d 920, 924-25 (8th Cir. 2003). A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be objectively unreasonable. Wright v. Van Patten, ___ S. Ct. ___, 2008 WL 59980, at *4, 5 (Jan. 7, 2008) (per curiam) (majority and concurring opinions); Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir. 2003) (holding that under AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is both wrong and unreasonable").

The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence." § 2254(e)(1). "The standard is demanding but not insatiable; . . . deference does not by definition preclude relief." Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (citation omitted).

**Trial Counsel's Failure to Call or Investigate a Witness**

Petitioner claims that his constitutional right to the effective assistance of trial counsel was violated by counsel's failure to contact and call Middleton as a witness. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To succeed on a claim of ineffective assistance of trial counsel, a habeas petitioner must establish both "that

counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency, there is "a reasonable probability" that the result of the trial would have been different. Id. at 688, 694.

Moreover, in the context of a § 2254 action, a petitioner

"must do more than show that he would have satisfied Strickland's test if his claims were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner."

Underdahl v. Carlson, 381 F.3d 740, 742 (8th Cir. 2004) (quoting Bell v. Cone, 535 U.S. 685, 698-99 (2002)). "Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories. Judicial review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Cagle v. Norris, 474 F.3d 1090, 1097 (8th Cir. 2007) (citations omitted).

Here, in concluding that defense counsel had not been ineffective in failing to call Middleton, the state courts relied upon the general principle that under Missouri law, it is improper to put a witness on the stand to testify that in her opinion another witness was not telling the truth at trial. Middleton, however, would not have testified that in her opinion L.H. was lying at the trial, but that L.H. had lied in the past about having had sexual exploits with grown men. Nevertheless, even assuming that Middleton's supposed testimony would have been admissible under state law, this Court concludes that the state courts' alternative determination that such testimony would not have changed the outcome

of the trial, was legally and factually reasonable. The Court arrives at this conclusion in light of the evidence at trial that L.H. had lied in the past about this particular case and had received therapy for a problem she had with lying, and most importantly, in light of Petitioner's confession to having had sex with L.H. Accordingly, as there is no reasonable probability that the result at trial would have been different, Petitioner is not entitled to federal habeas relief on this claim.

**Trial Court's Failure to Discharge Juror No. 2**

Petitioner argues that his constitutional rights were violated by the trial court's failure to discharge Juror No. 2, after she told the court that she believed she may have met L.H. in the past. Under clearly established federal law, the right to a jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors." See Morgan v. Illinois, 504 U.S. 719, 727 (1992) (citation omitted); see also Johnson v. Armontrout, 961 F.2d 748, 752 (8th Cir. 1992) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."). For habeas corpus purposes, bias of a juror "may be found either by an express admission, or by proof of specific facts which show such a close connection to the facts at trial that bias is presumed." Fuller v. Bowersox, 202 F.3d 1053, 1056 (8th Cir. 2000) (citation omitted).

Here, the state courts relied upon the vagueness of the recollections Juror No. 2 had of L.H., and upon Juror No. 2's assurances that she could render a verdict based upon the evidence and instructions. While the better course might have been to remove the juror

once it became clear from the child that the juror had in fact been a student teacher in her art class, the juror herself had only an uncertain and hazy recollection of L.H. and confirmed her ability to be impartial. Thus this Court concludes that the state courts' adjudication of this issue was not unreasonable. See Krutilek v. Kenney, 125 Fed. Appx. 93, 94-95 (8th Cir. Mar. 1, 2005) (holding that habeas petitioner convicted of car theft did not rebut presumption of reasonableness of state court's finding that a juror who informed the court during trial that he was acquainted with the daughter of the victim was not biased). Furthermore, this is not a case where juror bias may be presumed. See id. at 95 ("[P]resumed bias is reserved for extreme cases, such as when a juror is a close relative of a party or victim in the case.") (quoted case omitted).

## CONCLUSION

The Court concludes that Petitioner is not entitled to habeas corpus relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(2). See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000) (setting forth the standard for issuing a Certificate of Appealability); Langley v. Norris, 465 F.3d 861, 862-63 (8th Cir. 2006) (same).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the petition of Jeffrey David Lukens for habeas corpus relief be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability not be issued in this case.

13

The parties are advised that they have ten (10) days, to and including **February 4, 2008**, in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that the failure to file timely objections may result in a waiver of the right to appeal questions of fact.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of January, 2008.